UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN B. MANN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:09-cv-02137-RCL |
| ) | |
| DAVID CASTIEL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

JOINT MOTION OF DEFENDANTS DAVID CASTIEL, CAMERAN CASTIEL,
AND GERALD HELMAN TO REJECT PLAINTIFFS' LATE RESPONSE TO
COURT'S ORDER CONCERNING SERVICE OF PROCESS ENTERED
MARCH 12, 2010, AND TO DISMISS ACTION

By order dated March 9, 2010, this Court ordered plaintiffs to file, within 10

days of March 12, 2010, proof of service for the defendants in this case or show cause

why this case should not be dismissed for failure to serve the defendants within 120

days after the filing of the complaint ("March 9 Order"). The March 9 Order was issued

pursuant to Rule 4(m) of the Federal Rules of Civil Procedure which provides that:

> If a defendant is not served within 120 days after the complaint
> is filed, the Court - on motion or on its own after notice to the
> plaintiff – must dismiss the action without prejudice against the
> defendant or order that service be made within a specified period of
> time.

Thus, the Court ordered the enforcement of Rule 4(m), but also, *sua sponte*, granted the

plaintiffs an additional time within which to conform their conduct to the rule, as

contemplated by Rule 4(m).

RECEIVED

APR - 7 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

On March 25, 2010, plaintiffs filed a Response to Court's Order Concerning

Service of Process Entered March 12, 2010 ("Response").[1]  By the terms of the order,

this response was due no later than March 22, 2010.  Plaintiffs not only failed to serve

all defendants within the 120 days required by Rule 4(m), not only failed to do so within

the additional ten days provided by the Court, not only failed to file any proofs of

service, but did not timely even attempt to show cause why their complaint should not

be dismissed.  Therefore, defendants David Castiel, Cameran Castiel, and Ambassador

(Ret.) Gerald B. Helman respectfully move this Court to reject plaintiffs' late Response

and to dismiss this action.

I.      THE RESPONSE IS LATE AND SHOULD BE REJECTED.

The March 9 Order states that "[p]laintiffs shall file, within 10 days after March

12, 2010 . . . ."  Ten days after March 12 is March 22.  Plaintiffs filed on March 25,

2010, three business days after the due date.

II.     PLAINTIFFS DO NOT HAVE ANY EQUITIES ON THEIR SIDE THAT
        MIGHT OTHERWISE PERMIT A LATE FILING.

Although there are some cases in which an equitable application of excusable

neglect might counsel leniency for a late-filed response, this is not one of them.

---

[1]     Plaintiffs' March 25, 2010, filing is misnamed.  The March 9 Order was entered
not on March 12, 2010, but on March 10, 2010.  See April 5, 2010, Docket Sheet for
Mann v. Castiel, attached hereto as Exhibit 1.

A.    There was no excusable neglect.

Plaintiffs might claim that they thought that Fed. R. Civ. P. 6(d) allowed them an additional three days in which to respond. However, Rule 6(d) only applies "[w]hen a party may or must act within a specified time after *service*...." (emphasis added). The order requires a filing "within 10 days after March 12, 2010," not after service. Hence Rule 6(d) is inapplicable. Mattson v. Brown Univ., 925 F.2d 529, 532 (1st Cir. 1991) (though counsel may have believed that Rule 6(e) added three days to time to file bill of costs, time period runs from entry of judgment, not service, so rule was clearly inapplicable); Kyle v. Campbell Soup Co., 28 F.3d 928, 930 (9th Cir. 1994) (mistaken reliance on Rule 6(e) could not constitute excusable neglect under Rule 6 (b)(2)).

Had plaintiffs sought an extension of time *before* March 23, this Court might have extended the time, upon a showing of good cause. Fed. R. Civ. P. 6(b)(1). Plaintiffs did not so move.

Plaintiffs could still have sought to extend the time for filing *after* the time had expired by filing a motion for extension of time showing excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). Again, they did not so move. Therefore, this Court may not entertain the Response and must reject it. Smith v. District of Columbia, 430 F.3d 450, 456-57 (D.C. Cir. 2005) (In the absence of any motion for an extension of time, the trial court had no basis on which to exercise its discretion and may not entertain late motion for summary judgment).

3

Even had plaintiffs filed such a motion, however, they could not show excusable neglect. Excusable neglect requires both a demonstration of good faith by parties seeking enlargement and some reasonable basis for non-compliance with the filing deadline. Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co., 120 F.R.D. 51, 52-53 (N.D. Ill. 1988); United States v. Premises Known as Lots 14, 15, 16, ETC., 682 F. Supp. 288, 290 (E.D. N.C. 1987). Nothing about this entire proceeding reflects good faith and there is no reasonable basis for plaintiffs' failure to comply.

Plaintiffs John Mann and Robert Patterson are both *pro se*, but are nevertheless highly knowledgeable of court procedures. Robert Patterson, a Harvard Law School graduate, was a skilled trial lawyer until he was disbarred for his felony conviction for federal financial offenses and served time in jail. He is joined at the hip with John Mann. Robert Patterson and Mann are co-owners of the two corporate plaintiffs, Mann Technologies, LLC ("Mann Tech") and The Registry Solutions Company ("TRSC"). They have been involved together in various litigation matters against Ellipso, Inc. and David Castiel since 2005 and now appear to share the same residence.

The attorney for Mann Tech and TRSC is Ronald Patterson, a twin brother of Robert Patterson, who also graduated from Harvard Law School. Although for a number of years now Ronald Patterson has primarily sold real estate, he also cannot claim to be a novice in the requirements of the Federal Rules of Civil Procedure. The plaintiffs clearly cannot argue ignorance of the law as an excuse.

4

B.  Plaintiffs have no equities that would provide them any other basis for
failure to conform to the Order of this Court.

"Excusable neglect" is, at bottom, an equitable principle, founded upon the

notion that penalties ought not be exacted from those acting conscientiously.  That is not

the case here. To the contrary, the plaintiffs have acted in bad faith with regard to the

instant litigation from its outset and, indeed, even before it was filed.

On October 26, 2009, Mann, Robert Patterson, Mann Tech and TRSC all filed

identical amended proofs of claim in In re Ellipso, Inc., Case No. 09-00148 (Chapter

11), Bankr. D.C. (Judge Teel) for $40 million that were solely supported by an attached

copy of a draft complaint against 32 named defendants prepared for filing in this District

Court. [2]  The principal violation alleged was of the Racketeer Influenced and Corrupt

Organization Act, 18 U.S.C. §§ 1961-68 ("RICO"), and hence the complaint came to be

known as the "RICO Complaint." The same complaint with non-substantive

modifications was then filed in this Court on November 13, 2009, commencing this

proceeding.

Prior to the filing of the complaint in bankruptcy court and this Court, Mann had

filed a plan of reorganization that seeks to acquire Ellipso for the bargain basement price

of $200,000.  A vote on the Mann plan was scheduled for December 15, 2009.  The

clear intent of the filing of the RICO Complaint in both courts was to intimidate

creditors from voting against the Mann plan, create chaos in the consideration of the

---

[2]     Ellipso, Inc. was listed as an unnamed defendant due to the automatic stay in
effect in the bankruptcy proceeding.

plan by the Bankruptcy Court, and to frighten and prevent other potential investors from presenting competing plans. This strategy was successful.

      1.     <u>Creditor James Bailey</u>.  On November 18, 2009, prior to learning that the RICO Complaint had been filed in District Court, Bailey withdrew his claim stating that he was intimidated by the draft complaint and wished to avoid involvement in any possible District Court litigation. The plaintiffs, who were all present at the hearing at which Bailey asked to withdraw, knowing of Bailey's opposition to the Mann plan, sat mute and did not inform Bailey or Judge Teel that the RICO Complaint naming him as a defendant had actually been filed in District Court five days earlier. Thus Bailey lost the right to cast a vote against the Mann plan. When he finally learned in late December about the District Court filing, Bailey sought to have his claim re-instated and to allow him to vote against the plan. The Bankruptcy Court allowed the reinstatement of his claim, but refused to permit his late vote. March 21, 2010, Order, <u>In re Ellipso</u>, Dkt. No. 833.

      2.     <u>Creditor Vannessa Carpenter Lourie, P.C.</u>  Vannessa Carpenter Lourie, P.C. is the only creditor in the bankruptcy proceeding who is also named as a defendant in this action but voted for the Mann plan. The reason why Lourie voted for a plan proposed by an individual who had sued her and her law firm for $40 million is now apparent. In the Response, plaintiffs for the first time disclose that Vanessa Carpenter Lourie, and Vanessa Carpenter Lourie, P.C. will be dismissed as defendants. Response

¶4.  Plaintiffs obviously used the RICO Complaint as a threat and bargaining chip to get Lourie's vote for the Mann plan in return for dropping her from this action.

     3.   <u>The Debtor's counsel Butzel Long Tighe Patton, PLLC.</u>  Butzel Long Tighe Patton, PLLC ("Butzel Long") did not learn of the filing of the RICO Complaint in this Court until December 22, 2009.  Insofar as this action named the law firm and three of its attorneys – Thomas Patton, Esq., Neal Goldfarb, Esq., and Kermit Rosenberg, Esq. – as defendants, Butzel Long immediately perceived an ethical conflict between its duty to represent the Debtor (then in possession of its estate as a trustee) and the interests of all creditors in a disinterested manner and its need to defend itself and its attorneys against an action filed by a few alleged creditors of Ellipso.  Butzel Long therefore immediately sought to withdraw from its representation of the Debtor.  This attack on Debtor's counsel effectively neutered Butzel Long for more than a month, leaving the other creditors during a critical stage of the bankruptcy proceeding to fend for themselves in opposing the Mann plan. The plaintiffs succeeded in thoroughly confusing and delaying the bankruptcy proceeding.

     4.   <u>Creditor David Castiel and his wife Cameran Castiel.</u>  On February 19, 2010, Ronald Patterson served a Notice of Lis Pendens on David and Cameran Castiel that had been recorded in The Land Records of the District of Columbia on their home. The notice states that the RICO Complaint had been filed against the Castiels and that "this action seeks forfeiture and /or disgorgement of your real property located at 2831

44th St., N.W., Washington, D.C., 20007, as it constitutes the proceeds of a racketeering enterprise". Notice of Lis Pendens, attached hereto as Exhibit 2.

The obvious reason for the plaintiffs to block the sale of the Castiel's home is to prevent David Castiel from using proceeds from the sale to fund his own plan of reorganization that would compete with the Mann plan. Again, plaintiffs' efforts were successful.

The Castiels' had started to offer their property for sale in late 2009. Cameran Castiel Declaration, ¶ 10, attached hereto as Exhibit 3. After Cameran Castiel learned of the Notice of Lis Pendens on 2831 44th Street, she was informed by a title company that title to her property was no longer insurable. *Id.* ¶11. As a consequence, she and David Castiel could not continue to offer the property for sale in an open listing and have suffered financial harm. *Id.* ¶12.

The predicate for the lis pendens, however, is totally meritless. There is simply no nexus between any activities of Ellipso and the Castiels' property that could justify the imposition of a lis pendens. First, even if Ellipso somehow had obtained proceeds from a racketeering enterprise, any such proceeds could have nothing to do with the Castiels' ownership of 2831 44th Street, NW. The proceeds used to purchase that property came from the sale of the Castiels' more valuable former house purchased in 1998 and a mortgage. *Id.* ¶¶ 5-8. Secondly, even if the house had been purchased with the proceeds of a racketeering enterprise, RICO does not allow disgorgement as a remedy as alleged by plaintiffs in the RICO Complaint. United States v. Phillip Morris

8

USA, Inc., 366 F.3d 1190, 1197-1202 (D.C. Cir. 2005); *cert denied* 546 U.S. 960 (2005).

III.   PLAINTIFFS' RESPONSE IS REPLETE WITH MISREPRESENTATIONS AND STATEMENTS FURTHER DEMONSTRATING BAD FAITH.

1.       Plaintiffs allege in their Response that process has been served on four defendants: David Castiel, Cameran Castiel, Richard Burt, and Gerald Helman. Response ¶1. No proofs of service have been submitted as required by this Court's March 9 Order for any of these four defendants. Plaintiffs also acknowledge by this assertion that none of the other 28 named defendants were ever served during the 120 day period allowed for service by Fed. R. Civ. P. 4(m).

The Castiels and Helman acknowledge that they received a copy of a summons and the RICO Complaint from some person. Whether those persons qualify as process servers is unknown. It is very suspicious why the plaintiffs even at this late date and under Court order, did not produce any returns of service sworn to by a process server for the four defendants they assert were served.

Richard Burt, appointed by President Ronald Reagan to be the United States Ambassador to Germany, and former Chief United States Arms Negotiator for the Salt II Treaty, never responded to the RICO Complaint, signifying that he at least does not consider himself to have been served. David Castiel understands that copies of a summons and complaint were left at Burt's office when he was in Europe. If so, this would not constitute proper service. Martin v. Coca-Cola Co., 785 F.Supp 3,4 (D.C. Cir. 1992) (leaving copy of complaint at defendant's office insufficient to effect service

9

on individual defendant). There is, however, no need to speculate on Burt's circumstances. Plaintiffs could have easily cleared this up by submitting a proof of service sworn to by a process server stating who was served, where, and at what time. They did not do this and thus their bald, unsworn allegation of service cannot be accepted as true.

2.     Next, plaintiffs assert that David Castiel, Burt, and Helman are involved in the Ellipso bankruptcy proceeding and that they expect that the resolution of this proceeding will resolve all issues pertaining to at least one of these individuals within the next few weeks. Response ¶ 2. Plaintiffs never responded to the Motion for Stay filed by the Castiels and Helman on February 12, 2009, which would have been an appropriate place to timely inform the Court of this expectation.

Nor do the plaintiffs inform the Court that on December 29, 2009, Robert Patterson, Mann, and Mann Tech filed an objection to Ambassador Burt's claim, accusing him of gross neglect as a director of Ellipso, defrauding the creditors and the estate, and fraudulently submitting a claim in bad faith. In re Ellipso, Dkt. No. 544. These three objectors listed as their first exhibit for the trial on Burt's claim a copy of the RICO Complaint. *Id.*, Dkt. No. 731. Finding these outrageous accusations, which are identical to those made in the RICO Complaint, to be without foundation, Judge Teel allowed Burt's claim for $20,000 in its entirety. *Id.*, Dkt. No. 760. Thus, all the claims asserted against Burt in this action have already been found bereft of merit in the bankruptcy proceeding.

10

Similarly, on December 28, 2009, Robert Patterson, Mann, and Mann Tech filed an objection to Ambassador Helman's claim asserting that it was barred by fraud and the doctrine of unclean hands. _Id._, Dkt. No. 539.[3] These three objectors also listed a copy of the RICO Complaint as their first exhibit for the trial on Helman's claim. _Id._, Dkt. No. 732.   After an extended trial, on March 16, 2010, Judge Teel denied all of the objections and allowed a claim for Helman in the amount of one million four hundred and forty six thousand dollars ($1,446,000).  A copy of the transcript of the March 16, 2009, hearing at which Judge Teel read this decision is attached hereto as Exhibit 4. This decision is now also dispositive of the claims against Helman made in this action, but the plaintiffs have not revealed this fact to the Court.

3.    The plaintiffs further allege that service on Linda Awkard and Juan Tomassoni has been unsuccessful because Awkard has refused to accept service and Tomassoni is out of the country.  Response ¶5.  Plaintiffs, of course, cannot serve process in their own action and thus have no personal knowledge of these facts.  Fed. R. Civ. P 4(c)(2).  Plaintiffs adduce no evidence to support their contentions such as affidavits of process servers as to when and where he or she attempted to serve these defendants and why service was unsuccessful.

Plaintiffs then baldly misrepresent that "[s]ummonses have been issued for the remaining Defendants – James Bailey, Michael Taylor, T.D. Ameritrade, Inc., and Bo

---

[3]    Although TRSC was not listed as an objector to either the Burt or Helman claims, its attorney Ronald Patterson attended the hearings on both claims and identified himself as representing both Mann Tech and TRSC.

11

Belinsky – and are out for service." Response ¶6.  The Docket Sheet for this action as

of 11 days after the filing of the Response gives lie to this allegation.  April 5, 2010,

Docket Sheet for <u>Mann v. Castiel,</u> Ex. 1.  The Docket Sheet shows that summonses have

been issued for 16 of the 32 defendants in this case, the last two of which were issued on

February 4, 2010.  There are no docket entries showing summonses ever having been

issued to James Bailey, Michael Taylor, T.D. Ameritrade, Inc., or Bo Belinsky.

    4.    Finally, plaintiffs allege that the RICO Complaint was filed in this Court

"*inter alia*, because of statute of limitations considerations" and that they had thought

the bankruptcy matter would be concluded in December 2009.  Response ¶7.  However,

plaintiffs do not explain exactly which statutes of limitations for the multitude of laws

the 32 defendants are alleged to have violated prompted the November 13 filing of the

RICO Complaint.  Moreover, the expiration of the statute of limitations is insufficient to

serve as good cause for failure to effect timely service.  <u>Mendez v. Elliot,</u> 45 F.3d 75, 78

(4th Cir 1995);  <u>Frasca v. United States,</u> 921 F.2d 450,453 (2nd Cir. 1990).

The plaintiffs obviously were aware of the December 15, 2009, date for the vote

on the Mann plan of reorganization at the time they filed the RICO Complaint in this

Court.  Having the RICO Complaint available as a club and bargaining chip could help

obtain the votes necessary to approve the Mann plan.  The impact on the vote thus

would appear to be the true motivation for the filing of the RICO Complaint on

November 13, 2009.

Plaintiffs also brazenly assert that they have refrained from serving most of the Defendants who are also involved in the bankruptcy proceedings "on the belief that most of these Defendants will ultimately not be necessary Defendants herein." *Id.*, ¶ 8. Never mind! Plaintiffs have absolutely no concern about charging persons and firms with violations of criminal law in a public document loaded with explosive words such as "fraud" and "racketeering," thereby making it extremely difficult for them to refinance mortgages or obtain loans while under such a cloud for about five months. The fact that summonses have not been obtained or service effectuated does not change this devastating impact on the defendants whom the plaintiffs believe will ultimately not be necessary defendants herein.  What greater expression of bad faith litigation could there be?[4]

IV.     CONCLUSION.

For the reasons cited above, Cameran Castiel, David Castiel, and Ambassador Gerald Helman respectfully request this Court to reject the Response submitted late by plaintiffs and to dismiss this action in its entirety.

---

[4]     Plaintiffs disingenuously lead the Court to believe that they wish to have the RICO claims first resolved by the Bankruptcy Court. Response ¶¶7-8.  In truth, Robert Patterson falsely told Judge Teel that he and Mann had reached an agreement with the Trustee to allow their RICO claims for $10 each.  In re Ellipso, Dkt. No. 824.  After the Trustee denied the existence of such an agreement, Judge Teel refused to sign a draft consent order Patterson had submitted with respect to the alleged "agreement."

Respectfully submitted,

_____
David Castiel, *pro se*


_____
Cameran Castiel, *pro se*


_____
Gerald B. Helman, *pro se*


March 7, 2010