JOHN B. MANN, *et al.*,                          )
                                                 )
    Plaintiffs,                          )
                                                 )
    v.                                   )    Civil Action No. 09-2137 (RCL)
                                                 )
DAVID CASTIEL, *et al.*,                         )
                                                 )
                                                 )
    Defendants.                          )
                                                 )

## MEMORANDUM OPINION

This matter comes before the Court on a joint motion to dismiss by defendants David and Cameran Castiel and Gerald Helman. These defendants assert that plaintiffs failed to comply with the Court's order of March 9, 2010, which required plaintiffs to file proof of service of process or show cause for their failure to effect timely service pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Upon consideration of the Court's order [8], the plaintiffs' response [9], these defendants' motion [10], the applicable law, and the record herein, the Court will dismiss the case without prejudice.

## BACKGROUND

In 2005, Ellipso, Inc., brought suit against now-plaintiffs John Mann, Mann Technologies, LLC, The Registry Solutions Company, and Robert Patterson.[1] *Ellipso, Inc. v. Mann*, Case No. 05-cv-1186. On August 5, 2008, the Court dismissed all of Ellipso's claims. (*Ellipso, Inc.*, [199] Order Dismiss All Remaining Counts.) The Court ordered Ellipso to pay damages on a preliminary injunctive bond and attorneys' fees in two separate orders respectively issued on September 30, 2008, and January 29, 2009. (*Ellipso, Inc.*, [215] Mem. Op. and Order

---

[1] Ellipso, Inc., is a telecommunications company operated by now-defendant David Castiel.

Granting Mot. Damage; [241] Order Granting Att'ys' Fees.) Ellipso subsequently entered bankruptcy and is currently before the United States Bankruptcy Court for the District of Columbia. *In re: Ellipso, Inc.*, Case No. 09-bk-0148 (Chapter 11). All plaintiffs and defendants David Castiel and Gerald Helman are listed as creditors in the Ellipso bankruptcy. *Id.*

Plaintiffs jointly initiated the present action against 30 named defendants and an unidentified number of "John Does" on November 16, 2009.[2] ([1] Compl.) Plaintiffs enumerate 28 claims for relief in their complaint, including racketeering, larceny, negligence, unjust enrichment, and unfair trade practices. (Compl. ¶¶199-339.) The complaint alleges that the named defendants participated in an elaborate racket – dubbed a "bust-out scheme" by plaintiffs – spearheaded by the now-bankrupt Ellipso, Inc.[3] (Compl. ¶¶4-11.) Plaintiffs attached a draft copy of the complaint in a Proof of Claim filed in bankruptcy court on October 26, 2009. (*In re: Ellipso, Inc.*, [348] Mot. Leave Am. Claim 11-1.)

The three moving defendants asked the bankruptcy court to extend Ellipso's automatic stay to enjoin this case on February 1, 2010. (*In re: Ellipso, Inc.*, [671] Emergency Mot. Stay Dist. Ct. RICO Compl.) On March 3, 2010, the bankruptcy court denied that motion. (*In re: Ellipso, Inc.*, [758] Order Denying Emergency Stay.) The three defendants subsequently moved this Court to stay these proceedings on February 12, 2010. ([7] Mot. Stay or Alt. Extend Time File Answer (hereinafter "Mot. Stay".)) In this motion they claimed that only 3 of the 30 named defendants had been served. (*Id.* at 3.) Plaintiffs did not respond to this motion.

---

[2] Plaintiffs John Mann and Robert Patterson appear *pro se*. Both signed on to a single complaint along with Mann Technologies, LLC, and The Registry Solutions Company, both of whom are represented by attorney Ronald Patterson. (*See* Compl.)
[3] Ellipso is shielded from suit in this case by an automatic bankruptcy stay under 11 U.S.C. § 362(a) and is therefore not a named defendant.

On March 9, 2010, the Court ordered plaintiffs to file proof of service of process on the named defendants or show cause by March 22, 2010, as to why this case should not be dismissed for failure to effect timely service. ([8] Order Advising Pls. File Proof Process (hereinafter "Order: 03/09/10").) Plaintiffs filed a response on March 25, 2010. ([9] Pls.' Resp. to Ct's. Order Concerning Service (hereinafter "Pls.' Resp.")) Plaintiffs did not attach affidavits of service to their response. (*See id.*) Plaintiffs ask for a 60-day extension of time to effect service and state in pertinent part that plaintiffs: had served four defendants (*id.* at ¶ 1); had issued summonses for four more defendants and sent them out for service (*id.* at ¶ 6); and will serve 19 defendants – nine "corporate defendants" and ten "law firm defendants" – pending the conclusion of the Ellipso bankruptcy (*id.* at ¶¶ 2-3). Plaintiffs claim that they filed this complaint "*inter alia*, because of statute of limitations considerations" and may voluntarily dismiss a number of defendants pending the resolution of the bankruptcy proceedings. (*Id.* at ¶¶ 7-8.)

On April 7, 2010, the three moving defendants sought dismissal of this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. ([10] Joint Mot. to Reject Pls.' Resp. and Dismiss (hereinafter "Mot. Dismiss").) They urge the Court to reject plaintiffs' response as untimely. (*Id.* at 2-3.) The three defendants alternatively argue that plaintiffs' response, even if considered, is insufficient to prove service, or good cause to extend time for service and thus fails to comply with the Court's order. (*Id.* at 9-10, ¶ 1; 11-13, ¶¶ 3-4.) They admit to "receiv[ing] a copy of a summons and the RICO Complaint." (*Id.* at 9, ¶ 1.) The three moving defendants allege that plaintiffs have committed various bad faith acts in the prosecution of this case, including the filing of a frivolous *lis pendens* against the residence of defendants David and Cameran Castiel (hereinafter "the Castiels"). (*Id.* at 7-8.) Plaintiffs did not respond to this

motion. The Castiels subsequently moved the Court to cancel the *lis pendens* and order plaintiffs to post $1,000,000 bond for damages caused by the allegedly frivolous filing on June 7, 2010. ([15] Mot. to Release and Cancel *Lis Pendens* (hereinafter "Mot. Cancel").) Plaintiffs did not respond to this motion.

## LEGAL STANDARD

The plaintiffs must effect proper service of process on defendants within 120 days of filing a complaint. FED. R. CIV. P. 4(m). The plaintiffs have the burden of proving proper service. FED. R. CIV. P. 4(l). If they fail to serve a defendant within this time period, the Court must either dismiss the case without prejudice as to that defendant or order that service be made within a specified time. FED. R. CIV. P. 4(m). The Court may act either *sua sponte* or on motion made by a party. *Id.* If the plaintiffs show good cause for their failure to effect proper service, the Court must extend the time to serve for an appropriate period of time. *Id.* If the plaintiffs seek a good cause time extension, they have the burden to show such cause. *Id.*; *Strong-Fischer v. Peters*, 554 F. Supp. 2d 19, 23 (D.D.C. 2008).

## ANALYSIS

### A.    **Plaintiffs' Response Is Untimely and Will Not Be Considered**

1.    Applicable Law

Parties must comply with Court orders or face possible sanction or dismissal. *See* FED. R. CIV. P. 11(c), 41(b). This includes orders to act within a specified period of time. *See* FED. R. CIV. P. 6(b). If a party fails to act timely on an order, the Court may exercise its discretion to grant a time extension pursuant to Rule 6(b), which states in pertinent part:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> . . .

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

FED. R. CIV. P. 6(b). "Any *post* deadline extension must be upon motion made, and is permissible only where the failure to meet the deadline was the result of excusable neglect." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 (1990) (emphasis in original) (internal quotations omitted). "In the absence of any motion for an extension, the trial court ha[s] no basis on which to exercise [this] discretion." *Smith v. District of Columbia*, 430 F.3d 450, 457 (D.C. Cir. 2005). The Court may not consider an untimely act by a party without first granting an extension of time. *See id.* (reversing the lower court for granting an untimely motion without first granting a proper extension of time).

　　2.　Analysis

The Court ordered plaintiffs to file proof of timely service by March 22, 2010. (Order: 03/09/10.) Plaintiffs responded to this order on March 25th – three days later than ordered. To date they have not asked the Court for an extension of time to respond to this order despite having two distinct opportunities to do so. Although plaintiffs could have moved for an extension in their late response, they did not do so. (*See* Pls.' Resp.) Plaintiffs moved for an extension of time to effect service on defendants, but this is not the same as a motion to extend time to respond to the Court's order. (*See id.* at ¶ 8.) Plaintiffs additionally could have moved for an extension after receiving defendants' motion to dismiss, as the issue of timeliness is front-and-center in the defendants' motion. (*See* Mot. Dismiss 2.) Again, plaintiffs did not do so. Without a motion, the Court has no basis on which to grant a time extension. *See Smith*, 430 F.3d at 457. Both the Supreme Court and the D.C. Circuit Court have made it abundantly clear that Rule 6(b) is to be read and applied strictly. *See Lujan*, 497 U.S. at 897; *Smith*, 430 F.3d at

457. Because it has no basis to extend the time to respond to its order, the Court will not entertain plaintiffs' untimely response. *See Smith*, 430 F.3d at 457.

**B.** **Plaintiffs Have Failed to Prove Proper Service**

1. Applicable Law

The plaintiffs have the burden of proving proper service or waiver thereof. FED. R. CIV. P. 4(l)(1); *see also Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) ("[T]he party on whose behalf service is made has the burden of establishing its validity when challenged." (internal quotations and citation omitted)). The plaintiffs "must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Light*, 816 F.2d at 751 (internal quotations and citation omitted). The Rule requires the plaintiffs to serve a proper summons and a copy of the complaint on all defendants – delivered by a person authorized to serve process and received by a person authorized to accept it for the defendant – within the time restrictions of Rule 4(m). FED. R. CIV. P. 4(a)-(c), (e)-(j). Proof of actual notice will not satisfy this requirement because "notice alone cannot cure an otherwise defective service." *See Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, 4 (D.D.C. 2004) (internal quotations and citation omitted). Without valid service of summons or a waiver of service, the Court cannot establish proper venue and personal jurisdiction over the defendants, and the case may not proceed. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).

2. Analysis

The record contains no proof of proper service on *any* of the named defendants. Without proof of proper service, plaintiffs cannot establish that they served any of the named defendants within the 120-day limit of Rule 4(m). Although the three moving defendants admit that they

received a copy of a summons and the complaint within the 4(m) time period, (Mot. Dismiss 9, ¶ 1), this only proves actual notice and not proper service. *Compare* (Mot. Dismiss 9, ¶ 1) *with* FED. R. CIV. P. 4(a)-(c), (e)-(j). Proof of actual notice is insufficient to prove proper service. *See Whitehead*, 221 F.R.D. at 4. Indeed, the three defendants obliquely challenge whether plaintiffs have complied with Rule 4(c)(2). (*See* Mot. Dismiss 9, ¶ 1) ("Whether those persons [who served the defendants] qualify as process servers is unknown."). Plaintiffs have failed to establish that any of the named defendants were served within 120 days of filing their complaint, and this alone warrants dismissal under Rule 4(m).

Even if the Court considered plaintiffs' response, they would still fail to prove proper service. Plaintiffs alleged that they served four defendants, (Pls.' Resp. ¶ 1), but they neglected to attach affidavits of service attesting to the same. Allegations alone do not constitute proof of service. *See* FED. R. CIV. P. 4(l). Plaintiffs' brief therefore fails to establish proper service. *See Light*, 816 F.2d at 751. Accordingly, plaintiffs would not sufficiently demonstrate timely service under Rule 4(m) even if the Court accepted their late response.

### C.    Plaintiffs Have Failed to Show Good Cause for Their Failure to Serve

1.    Applicable Law

The Court must extend time for service by an appropriate period if the plaintiffs show good cause for their failure to effect timely service. FED. R. CIV. P. 4(m). The plaintiffs bear the burden of showing good cause if they seek a time extension. *Id.*; *Strong-Fischer v. Peters*, 554 F. Supp. 2d 19, 23 (D.D.C. 2008). "Mistake of counsel or ignorance of the rules of procedure usually does not suffice to establish good cause." *Whitehead*, 221 F.R.D. at 3 (internal quotations and citation omitted).

2.    Analysis

Plaintiffs make no showing of cause outside of their disallowed brief. The Court finds no apparent reason for their failure to effect timely service, leading the Court to conclude that such failure is the result of mistake of counsel or ignorance of the rules of procedure. Neither mistake of counsel nor ignorance of the rules constitutes good cause. *Whitehead*, 221 F.R.D. at 3. Without a satisfactory explanation as to why they have failed to serve the named defendants, plaintiffs accordingly fail to carry their burden to prove good cause for a time extension. *See* FED. R. CIV. P. 4(m); *Strong-Fischer*, 554 F. Supp. 2d at 23.

Even if the Court considered plaintiffs' untimely response, it would still find that plaintiffs have not carried their burden. Their brief contains several glaring omissions and inconsistencies. First, plaintiffs state they have not served the nine "corporate defendants" because these defendants are involved in the Ellipso bankruptcy and action in those proceedings may settle all issues with those defendants. (Pls.' Resp. ¶ 2.) It is not clear, however, that any of the "corporate defendants" are actually involved in the Ellipso bankruptcy.[4] (*See In re: Ellipso, Inc.*, Docket.) Although it is possible that proof of the corporate defendants' involvement is buried somewhere within the gargantuan bankruptcy docket – which to date contains over 1,000 entries – plaintiffs have not brought such proof to the attention of the Court.

Second, plaintiffs claim that summonses have been issued for four defendants – James Bailey, Michael Taylor, T.D. Ameritrade, Inc., and Bo Belinksy – and that those summonses are out for service. (Pls.' Resp. ¶6.) However, there is no evidence to support this contention. The

---

[4] None of the "corporate defendants" are listed as parties to the bankruptcy. (*See In re: Ellipso, Inc.*, Docket.) Defendants Ellipso Private Holdings, Virtual Geosatellite Holdings, Mobile Communications Holdings, and Virtual GeoSatellite are listed as recipients of a notice of a motion to convert Ellipso's bankruptcy into a Chapter 7 liquidation, dated November 26, 2009. (*In re: Ellipso, Inc.*, [436] Cert. Mailing – Hearing.) However, this document appears to be nothing more than a notice to potentially interested 3rd parties and does not compel any of the recipients to appear. (*See id.*) On December 3, 2009, the notices to these defendants were returned as undeliverable. (*See In re: Ellipso, Inc.*, Docket.)

record contains a notice of summons issuance for only one of these defendants (James Bailey). (*See* Docket.) This notice was recorded on May 5, 2010, over a month after plaintiffs told the Court that these summonses were issued and out for service. Plaintiffs make no attempt to explain this obvious inconsistency, leaving the Court to wonder whether it is due to clerical error by the clerk's office or deceit by plaintiffs.

Plaintiffs' untimely response does little to convince the Court that they have good cause for failing to prove service on the named defendants in this case. To the contrary, it convinces the Court that plaintiffs have been careless at best or untruthful at worst. Even if the Court were to consider their brief, the Court would still find no good cause to warrant a time extension in this case. *See* FED. R. CIV. P. 4(m); *Strong-Fischer*, 554 F. Supp. 2d at 23.

**D.    Plaintiffs Fail to Persuade the Court to Grant a Discretionary Extension**

1.    Applicable Law

While Rule 4(m) identifies when the Court *must* extend the time for service, the Rule does not explicitly state when the Court *may* extend the time for service. The Court of Appeals for the D.C. Circuit has no binding authority to guide the Court on this point. Upon its own review, the Court will now find that Rule 4(m) allows and, in fact, requires a district court to consider a discretionary extension of time absent a showing of good cause.

The Court finds support for this interpretation in both the text of the Rule and various persuasive sources. Rule 4(m) states in pertinent part that:

> If a defendant is not served within 120 days after the complaint is filed, the court . . . *must dismiss the action* without prejudice against that defendant *or order that service be made within a specified time*. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m) (emphasis added). The emphasized portions of the first sentence grant the Court general discretion to either dismiss a case or grant a time extension, qualified only the

requirement that the Court grant a time extension for good cause shown. *See id.* The notes of Civil Rules Advisory Committee support this interpretation: " [Rule 4(m)] authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown[.]" FED. R. CIV. P. 4(m), Notes of the Advisory Committee on the Rules (1993). Additionally, a number of circuit courts similarly read the Rule to allow discretionary time extensions. *See, e.g., Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996); *Coleman v. Milwaukee Bd. of School Directors*, 290 F.3d 932, 934 (7th Cir. 2002); *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007). The Court accordingly finds that it may grant a discretionary time extension absent a showing of good cause.

The Court must consider a discretionary time extension as an alternative to dismissal without prejudice. *See* FED. R. CIV. P. 4(m) ("[T]he court . . . *must* dismiss the action . . . *or* order that service be made within a specified time.") (emphasis added). As with all other provisions of Rule 4(m), the burden of persuading the Court to grant a discretionary time extension falls on the plaintiffs. *See* FED. R. CIV. P. 4(m). The plaintiffs need not show "good cause," but they must still show some cause as to why the Court should not dismiss their case. *See id.; see also Coleman*, 290 F.3d at 934 (stating that the judge must consider "any of the factors *urged upon him by the plaintiff* for exercising discretion in [his] favor . . . . " (emphasis added)). Although no hard list of considerable factors exists, the advisory committee notes that "[r]elief [from dismissal] may be justified, for example, if the applicable statute of limitations would bar [the plaintiff's] refiled action." FED. R. CIV. P. 4(m), Notes of the Advisory Committee on the Rules (1993); *see also Lepone-Dempsey*, 476 F.3d at 1282 (reversing the district court for failure to consider the running of the statute of limitations, as pleaded by the

plaintiff, before dismissing the case). The Court will therefore consider the effects of any

potential time bar as well as the duration of plaintiffs' non-compliance with the Rule, and the *pro*

*se* status of two of the plaintiffs. The Court will consider each of these issues separately.

2. Analysis

a. *Plaintiffs' Ability to Refile*

Plaintiffs claim that they filed this complaint "*inter alia*, because of statute of limitations

considerations." (Pls.' Resp. ¶ 7.) Although the substance of plaintiffs' untimely brief may not

be considered, the Court notes that plaintiffs potentially face a time bar to refiling all or part of

this case. While the Court considers plaintiffs' ability to refile a major factor in its calculus, the

existence, or potential existence, of a time bar does not automatically warrant a discretionary

extension of time. *See* FED. R. CIV. P. 4(m), Notes of the Advisory Committee on the Rules

("Relief *may* be justified . . . . " (emphasis added)); *see also Lepone-Dempsey*, 476 F.3d at 1282

("[T]he running of the statute of limitations . . . does not require that the district court extend

time[.]"). Plaintiffs must persuade the Court that relief is warranted in this case based upon the

facts presented. *See* FED. R. CIV. P. 4(m). They fail to do so.

Plaintiffs do not clarify which – if any – of their numerous claims would be time barred if

they were forced to refile. They fail to point the Court to the statutes or laws that govern time

limitations on their 28 claims and fail to plead facts to establish when the statutory clock began

to run on the 30 named defendants. Indeed, the only piece of information presented to the Court

is a single sentence in their untimely brief that states that there are "statute of limitations

considerations." (Pls' Resp. ¶7.) This simply does not provide enough information to gauge the

legitimacy of such a claim. Courts determine whether to grant a discretionary time extension

based upon "the factors urged upon [it] by the plaintiff." *See Coleman*, 290 F.3d at 934.

Although Rule 4(m) requires the Court to examine the "factors urged upon it," plaintiffs must bring those factors to the attention of the Court before it will consider them as grounds for a discretionary time extension. *See* FED. R. CIV. P. 4(m); *see also Thompson*, 91 F.3d at 21 (denying the plaintiff's appeal because he did not present his argument for a discretionary time extension to the district court). Plaintiffs do not establish that their case will be time barred, much less that the facts of this case warrant a time extension. The Court does not find adequate reason to grant a discretionary time extension on this ground.

      b.    *Duration of Plaintiffs' Non-Compliance*

Plaintiffs have known of the service deficiencies in their case for some time. Defendants first alerted plaintiffs to their non-compliance with Rule 4 on February 12, 2010 – over five months ago. (*See* Mot. Stay, 3.) The Court put plaintiffs on notice of their potential dismissal over four months ago. (*See* Order: 03/09/10.) Again, defendants raised plaintiffs' continued non-compliance with Rule 4(m) – along with the deficiencies in plaintiffs' response to the Court's order – three months ago in their motion of April 7, 2010. (*See* Mot. Dismiss.) Despite ample notice and opportunity, plaintiffs have failed to remedy their behavior. Plaintiffs did not even bother to respond to the latest motions filed against them, a dispositive oversight in itself. *See* D.D.C. LCvR 7(b) (If the opposing party does not respond to a motion against them within 14 days, "the Court may treat the motion as conceded."). As a whole the record shows that plaintiffs have done little to save their case from an end that they should have seen coming for months. Based on this, the Court has no reason to believe that this case would benefit from a time extension.

      c.    *Pro Se Status of Two Plaintiffs*

As noted earlier, plaintiffs John Mann and Robert Patterson participate in this case *pro se*. The Court typically affords *pro se* litigants more latitude to correct defects in service of process. *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993). However, this latitude is not without limit. As the D.C. Circuit noted in *Moore*, the purpose of showing leniency to *pro se* litigants is to "supply minimal notice of the consequences of not complying with the procedural rules." *See* 994 F.2d at 876. The Court did this almost five months ago in its order of March 9, 2010. (*See* Order: 03/09/10.) The order identified the provision of law with which plaintiffs had not complied, notified them that they faced dismissal for their inaction, and gave them two options to rectify their behavior. (*Id.*) While the Court did not provide plaintiffs with comprehensive instruction on how to bring themselves into compliance, "[d]istrict courts do not need to provide detailed guidance to *pro se* litigants[.]" *See Moore*, 994 F.2d at 876. The Court has provided the *pro se* litigants ample latitude to correct the service deficiencies in their case, and they are not entitled to any further leniency.

The Court further notes that plaintiffs Mann and Patterson may not be typical, unsophisticated *pro se* litigants. Both are businessmen who have actively participated as *pro se* creditors in the Ellipso bankruptcy for months. (*See In re: Ellipso, Inc.,* Docket.) Additionally, Mann and Patterson filed this suit and all correspondence herein jointly with plaintiffs Mann Technologies, LLC, and The Registry Solutions Company, both of whom are represented by counsel. Defendants allege that both companies are co-owned by Patterson and Mann. (Mot. Dismiss 4.) Defendants further claim that Patterson, although technically a *pro se* litigant, has formal legal training. (*Id.*) Plaintiffs have not contested either allegation. The record as a whole does not convince the Court that plaintiffs have failed to comply with the Rules of Civil Procedure due to Mann' and Patterson's *pro se* status. Accordingly, the Court is not persuaded

that plaintiffs merit any further latitude on this issue and finds no reason to grant a discretionary time extension on this ground.

The record as a whole persuades the Court that no further extension of time is warranted in this case. Plaintiffs have failed to establish that they will be barred from refiling this case, they have been given ample notice of their non-compliance with Rule 4(m), and the fact that two plaintiffs appear *pro se* is of no moment in this case. The Court will not to extend time to serve any further and will dismiss this case without prejudice pursuant to Rule 4(m). Pursuant to DC Code § 42-1207(d), the Court will further order the release of the *lis pendens* on defendants David and Cameran Castiels' real property.

## DEFENDANT'S REMAINING MOTIONS

### A. Motion to Stay or Alternatively to Extend Time

Defendants request that the Court stay these proceedings or alternatively to extend the time to file an answer. (Mot. Stay. 1.) The pending dismissal of plaintiffs' case obviates the need to address either issue. The Court will deny both requests as moot.

### B. Motion to Cancel the *Lis Pendens*

Defendants David and Cameran Castiel move to cancel the *lis pendens* on their residence. (Mot. Cancel 1.) The Castiels claim that their home has no nexus to this case and that plaintiffs recorded the document in order to cloud the title to their property, derail a planned sale, and frustrate the Ellipso bankruptcy proceedings. (*Id.* at 4, 6.) While the pending dismissal of this case will grant the Castiels the same relief that they seek through this motion – that is it will allow them to quash the *lis pendens* and clear the title to their property – they cannot use the Court's decision to release the *lis pendens* until the appeals process plays out. *See* DC Code § 42-1207(d). Their motion therefore presents a controversy that is still real as opposed to moot.

However, adjudication of their motion will not lead to faster or more comprehensive relief than that offered by dismissal and is therefore not ripe for adjudication at this time.

"The ripeness doctrine is a justiciability doctrine 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *National Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 n. 18 (1993)). Even in a case that "rais[es] only prudential concerns, the question of ripeness may be considered on a court's own motion." *Id.* at 808. In determining whether an issue is ripe for review, the Court applies a two part test to analyze: 1) the fitness of the issues for judicial decision; and 2) the hardship to the parties of withholding court consideration. *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996). The Court also considers the basic policy rationale behind the ripeness doctrine: "Article III courts should not make decisions unless they have to." *See id.*

These three factors persuade the Court that this motion is prudentially unripe. Addressing them in reverse order, the Court first finds that there is no apparent need to decide the Castiels' motion at this time. The Court sees no present advantage to adjudicating the motion, since dismissal of the underlying case will give the Castiels the relief they seek. *See* DC Code 42-1207(d). The motion will become moot upon final judgment against plaintiffs in this case. Second, the Castiels will suffer no hardship by the Court's refusal to consider the motion. While appeal of the Court's decision would prevent immediate release of the *lis pendens*, adjudication of this motion will not offer the Castiels quicker relief since appeal would also prevent the immediate enforcement of such adjudication. The Court recognizes that the Castiels may suffer hardship by a delay in the termination of the *lis pendens*, (*see* Mot. Cancel 9), but they would have to endure this hardship regardless of the Court's action on their motion to

cancel. Finally, the Court has serious concerns about the fitness of this issue for federal judicial review. The relevant section of the D.C. Code that would allow the Court to cancel the *lis pendens* came into force on May 27, 2010. *See* Lis Pendens Amendment Act of 2010, DC Law 18-180, 18th Council Sess. (creating DC Code §42-1207(h)). The D.C. courts have not had ample opportunity to test this section and many of its ambiguous provisions remain undefined. *See* DC Code § 42-1207(h). Any action that the Court took on this matter would require it to speculate on D.C. law. Considering the pending mootness of the motion, the absence of additional hardship to the Castiels, and the ambiguity in the applicable law, the Court will deny the motion as prudentially unripe.

### C.    Motion to Order Plaintiffs to Post Bond

The Castiels additionally move the Court to order plaintiffs to post a bond of $1,000,000 "for the damages they have caused and continue to cause by the unlawful recording of [the] *lis pendens*." (Mot. Cancel 1.) The Court understands the Castiels to move for a bond order notwithstanding the dismissal of the above-captioned case, as D.C. Code § 42-1207(d) prevents them from recording the Court's forthcoming order until it becomes final. (*See* Mot. Cancel 8-9.) The Castiels argue that "there is a strong likelihood that [their] damages may continue" pending finality in this case, which "further warrant[s] the posting of a bond by plaintiffs at this time." (Mot. Cancel 9.) However, the Castiels fail to identify a legal ground on which the Court can offer relief, and the Court is unaware of any law that would permit the posting of such a bond.

The Court finds no basis in the text of D.C. Code § 42-1207 or the common law of the District of Columbia to order the posting of a bond on the *lis pendens*. Similarly, the Court cannot treat the *lis pendens* as an injunction against the sale of the property and order plaintiffs to

post a security bond under Rule 65(c) of the Federal Rules of Civil Procedure. As noted by the District of Columbia Court of Appeals, the common law doctrine of *lis pendens* does not bar the sale or transfer of the encumbered property. *1st Atlantic Guar. Corp. v. Tillerson*, 916 A.2d 153, 156-57 (D.C. 2007). A *lis pendens* is therefore not an injunction, which by definition is "[a] court order commanding or preventing an action." BLACK'S LAW DICTIONARY 855 (9th ed. 2009); *see also* 51 AM. JUR. 2d *Lis Pendens* § 1 (West 2010) ("However, it [a *lis pendens*] is not the equivalent of an injunction, as it does not formally restrain the sale, conveyance, or purchase of the property.") Without a sufficient legal basis, the Court will not order plaintiffs to post a bond on the *lis pendens* and will therefore deny the Castiels' motion.

## CONCLUSION

For the reasons set forth above, defendants' motion to reject plaintiffs' response and dismiss shall be GRANTED and this case will be DISMISSED without prejudice. Defendants' motion for stay or alternatively to extend time to file an answer shall be DENIED. Defendants David and Cameran Castiels' motion to cancel the *lis pendens* on their property and motion to order plaintiffs to post a bond on the *lis pendens* shall both be DENIED.

A separate order shall issue this date.

_____8/3/10_____
Date

ROYCE C. LAMBERTH
Chief Judge
United States District Court

17